UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

MARTIN SCHOENHALS,                                    ECF CASE

                        Plaintiff,                    Docket No.
                                                      CV 15-2044 (ADS)(ARL)

            -against-

DOWLING COLLEGE CHAPTER, NEW YORK STATE
UNITED TEACHERS, LOCAL # 3890, NEW YORK
STATE UNITED TEACHERS, AFT, AFL-CIO and
DOWLING COLLEGE,

                        Defendants.

-------------------------------------------------------------------------X

---

## DEFENDANT DOWLING COLLEGE'S
## MEMORANDUM OF LAW
## IN OPPOSITION OF
## MOTION FOR LEAVE TO AMEND

---

Respectfully submitted,

INGERMAN SMITH, L.L.P.
*Attorneys for Defendant*
DOWLING COLLEGE
150 Motor Parkway, Suite 400
Hauppauge, New York 11788
(631) 261-8834

OF COUNSEL
DAVID F. KWEE (DK 1199)

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... i-v

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ............................................................................2

ARGUMENT ...............................................................................................10

I.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD
      AGE DISCRIMINATION CLAIMS SHOULD BE DENIED
      AS AMENDING THE COMPLAINT TO ADD AGE
      DISCRIMINATION CLAIMS WOULD BE FUTILE .......................10

      1.  *Age Discrimination Claims are Time-Barred*.................11
      2.  *Plaintiff Failed to Timely Commence
          an Age Discrimination Action* ..................................12
      3.  *Plaintiff's Proposed Age Discrimination Claims Do Not
          Relate Back to this Action*.......................................14
      4.  *Failure to State Allegations Establishing Prima Facie
          Case of Age Discrimination*......................................16

II.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND
      ADD BREACH OF CONTRACT CLAIMS SHOULD BE
      DENIED AS AMENDING THE COMPLAINT TO ADD A
      BREACH OF CONTRACT CLAIM WOULD BE FUTILE.............20

      1.  *Plaintiff Fails to State that a Provision of a Contract
          was Breached*...........................................................20
      2.  *Plaintiff Lacks Standing to Present a Breach
          of Contract Claim* ....................................................22

III.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD
      NEW YORK STATE HUMAN RIGHTS LAW CLAIMS
      SHOULD BE DENIED AS FEDERAL LAW PREEMPTS
      STATE LAW CLAIMS...................................................................22

IV.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND
      TO ADD STATE LAW CLAIMS SHOULD BE DENIED ............24

CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

<u>Cases:</u>                                                                                                        <u>Page</u>

<u>Abbasi v. Herzfeld & Rubin, P.C.</u>
863 F.Supp. 144, 147 (S.D.N.Y.1994) ............................................................19

<u>Adams v. New York State Educ. Dep't</u>
752 F. Supp.2d 420 (S.D.N.Y. 2010)
<u>aff'd sub nom.</u> <u>Ebewo v. Fairman</u>, 460 F. App'x 67 (2d Cir. 2012)...............................18

<u>Allen v. Westpoint-Pepperell, Inc.</u>
945 F.2d 40, 44 (2d Cir. 1991)) .....................................................................20

<u>Allis–Chalmers Corp. v. Lueck</u>
471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)......................................22

<u>Baldwin County Welcome Center v. Brown</u>
466 U.S. 147, 149-50, 104 S.Ct. 1723, 1724-25,
80 L.Ed.2d 196 (1984) (per curiam) ...............................................................13

<u>Benjamin v. Health & Hosps. Corp.</u>, No. 07CV2487(KAM)(LB),
2009 WL 2959622, at *6 (E.D.N.Y. Sept. 11, 2009)
<u>aff'd</u>, 394 F. App'x 829 (2d Cir. 2010)..............................................................11

<u>Berlyn v. Board of Education</u>
80 A.D.2d. 572, 572 (2d Dept.), <u>aff'd</u>, 55 N.Y.2d. 912, 913 (1982)...............................22

<u>Bohnet v. Valley Stream Union Free Sch. Dist. 13</u>
30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014)
<u>aff'd</u>, 594 F. App'x 53 (2d Cir. 2015) ...............................................................17

<u>Bohnet v. Valley Stream Union Free Sch. Dist. 13</u>
No. 12–CV–1989 (DRH), 2014 WL 3400462, at *4 (E.D.N.Y. July 14, 2014) ...........................17

<u>Campbell v. A.C. Petersen Farms, Inc.</u>
69 F.R.D. 457 (D.Conn.1975) .......................................................................15

<u>Carnegie-Mellon Univ. v. Cohill</u>
484 U.S. 343, 350 (1988)...........................................................................24

<u>Carpenter v. City of New York</u>
2011 WL 2118599, 2 (E.D.N.Y 2011) ................................................................13

i

Charlot v. Ecolab, Inc.
97 F. Supp. 3d 40, 55 (E.D.N.Y. 2015) ............................................................ 14

Courtney v. City of New York
20 F.Supp.2d 655, 658 (S.D.N.Y. 1998) ......................................................... 16

Cross v. N.Y.C. Transit Auth.
417 F.3d 241 (2d Cir.2005) ............................................................................ 18

DelCostello v. Int'l Bhd. of Teamsters
462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).................... 23

Deylii v. Novartis Pharm. Corp., No. 13-CV-06669 NSR
2014 WL 2757470, at *7 (S.D.N.Y. June 16, 2014) ...................................... 17

Diamantopulos v. Brookside Corp.
683 F.Supp. 322, 329 (D.Conn.1988).............................................................. 18

Dluhos v. Floating & Abandoned Vessel, Known as New York
162 F.3d 63, 69 (2d Cir. 1998) ....................................................................... 10

Dougherty v. Am. Tel. & Tel. Co.
902 F.2d 201, 203 (2d Cir.1990) .................................................................... 23

Fagan v. U.S. Carpet Installation, Inc.
770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011) .................................................... 16

Foman v. Davis
371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)................................ 10

Garnett-Bishop v. New York Cmty. Bancorp, Inc.
No. 12-CV-2285 ADS ARL, 2014 WL 5822628, at *23-27 (E.D.N.Y. Nov. 6, 2014) ............... 17

Gilat Satellite Networks, Ltd., No. 02–CV–1510
2005 WL 2277476, at *26 (E.D.N.Y. Sept. 19, 2005) .................................... 14

Gross v. FBL Financial Services, Inc.
557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)........................ 17

Health-Chem Corp. v. Baker
915 F.2d 805, 810 (2d Cir. 1990) ................................................................... 10

Hodges v. Rensselaer Hartfor Graduate Ctr., Inc.
No. 06–CV–850, 2008 WL 793594 at *10 (D.Conn. Mar. 20, 2008)............ 18

Holowecki v. Fed. Express Corp.
440 F.3d 558, 563 (2d Cir.2006) ......................................................................... 13

Hunter v. Deutsche Lufthansa AG
863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012) ......................................................... 11

Journal Publ'g Co. v. Am. Home Assurance Co.
771 F.Supp. 632, 635 (S.D.N.Y. 1991) ............................................................... 11

Klinge v. Ithaca College
244 A.D.2d 611, 663 N.Y.S.2d 735, 736 (3d Dept. 1997) .................................. 21

Lamb v. Henderson
No. 98 CIV.2756 (RWS), 1999 WL 596271, at *3 (S.D.N.Y. Aug. 9, 1999) ........ 19

Leon v. Dep't of Educ.
No. 10–CV–2725, 2014 WL 1689047, at *13 (E.D.N.Y. Apr. 29, 2014) ............. 17

Lucente v. Int'l Bus. Machines Corp.
310 F.3d 243, 258 (2d Cir. 2002) ........................................................................ 10

Ludwig v. Rochester Psychiatric Ctr.
347 Fed.Appx. 685, 686 n. 1 (2d Cir. 2009) ....................................................... 16

Maas v. Cornell University
94 N.Y.2d 87, 92-93, 699 N.Y.S.2d 716, 719 (1999) ......................................... 21

Manley v. N.Y. City Police Dep't, No. 05–CV–679 (FB)(LB)
2005 WL 2664220 (E.D.N.Y. Oct. 18, 2005) ...................................................... 13

Mina Inv. Holdings Ltd. v. Lefkowitz
184 F.R.D. 245, 257 (S.D.N.Y. 1999) ................................................................. 11

Nweke v. Prudential Ins. Co. of Am.
25 F. Supp. 2d 203, 231 (S.D.N.Y. 1998) ........................................................... 24

Payne v. Malemathew, No. 09–CV–1634 (CS)
2011 WL 3043920, at *2 (S.D.N.Y. Jul. 22, 2010) .............................................. 17

Prudential Ins. Co. of Am. v. BMC Indus., Inc.
655 F.Supp. 710, 711 (S.D.N.Y. 1987) ............................................................... 11

Quinn v. Green Tree Credit Corp.
159 F.3d 759, 765 (2d Cir. 1998) ........................................................................ 11

Risley v. Rubin
272 A.D.2d 198, 708 N.Y.S.2d 377, 378 (1st Dept. 2000) ...........................................21

Rosenberg v. Martin
478 F.2d 520 (2d Cir. 1973) .........................................................................................15

San Diego Bldg. Trades Council v. Garmon
359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).................................................22

Sabetay v. Sterling Drug, Inc.
69 N.Y.2d 329, 514 N.Y.S.2d 209, 211-12 (1987).......................................................20

Sherlock v. Montefiore Medical Ctr.
84 F.3d 522, 525 (2d Cir.1996) ....................................................................................13

Snoqualmie Tribe v. United States
372 F.2d 951, 960, 178 Ct.Cl. 570 (1967)....................................................................15

Sobon v. Horizon Eng'g Assocs., LLP
No. 5:13–CV–1431 (GTS), 2014 WL 4889340, at *9 (N.D.N.Y. Sept. 30, 2014) .....................17

Stevelman v. Alias Research Inc
174 F.3d 79, 86 (2d Cir.1999) ......................................................................................14

Tanvir v. New York City Health & Hospitals Corp.
480 Fed.Appx. 620, 621 (2d Cir.2012)..........................................................................11

Thomas v. New York City Dep't of Educ.
938 F. Supp. 2d 334, 346-48 (E.D.N.Y. 2013) .............................................................11

Vaca v. Sipes
386 U.S. 171, 186-88, 87 S. Ct. 903, 914-16, 17 L. Ed. 2d 842 (1967) ...........................23

Vera v. Saks & Co.
335 F.3d 109, 116 (2d Cir. 2003) .................................................................................22

Wang v. Palmisano
51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014) .....................................................................13

Wallace v. Town of Stratford Bd. of Educ.
674 F. Supp. 67, 69-70 (D. Conn. 1986) ......................................................................15

White v. White Rose Food
237 F.3d 174, 178 (2d Cir.2001) ..................................................................................23

iv

Wiercinski v. Mangia 57, Inc.
No. 09-CV-4413 (ILG), 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010) ...............................24

Woodman v. WWOR–TV, Inc.
411 F.3d 69, 85 (2d Cir.2005) ..........................................................................................................18

Zerilli-Edelglass v. New York City Transit Authority
333 F.3d 74, 79 (2d Cir. 2003) .........................................................................................................13


Statutes:


28 U.S.C. § 1367(c) (3) ......................................................................................................................24

29 U.S.C. § 621 et seq. ........................................................................................................................1

29 U.S.C. § 626(e) .............................................................................................................................13

42 U.S.C. § 2000e–5(e)(1) ................................................................................................................11

42 U.S.C. § 2000e-5(f)(1) ..................................................................................................................13

42 U.S.C. § 12117(a) .........................................................................................................................13

N.Y. Exec. Law § 290 et seq. ..........................................................................................................1,16

N.Y. Exec. Law § 296(1)(a) ..............................................................................................................16


Rules:

Fed.R.Civ.P. 6(a) ...............................................................................................................................12

Fed.R.Civ. P 12(b)(6) .........................................................................................................................11

Fed.R.Civ.P. 15(c) .............................................................................................................................14


Other Materials:

C. Wright & A. Miller, 6 *Federal Practice and Procedure: Civil* § 1497 (1971).........................14

## PRELIMINARY STATEMENT

Plaintiff MARTIN SCHOENHALS in the motion now before this Court, seeks leave to amend his Complaint to add age discrimination causes of action to his hybrid Duty of Fair Representation ("DFR")/breach of collective bargaining agreement claim under Section 301 of the Labor Management Relations Act ("LMRA"). The proposed First Amended Complaint attached to his motion alleges facts and claims not included in the original Complaint which was filed ten months ago, in April of 2015. In particular, Plaintiff now seeks relief under the Age Discrimination in Employment Act of 1967 ("ADEA"), codified as 29 U.S.C.A. § 621 et seq., and the New York State Human Rights Law ("NYSHRL"), codified as New York Executive Law § 290 et seq.

Defendant DOWLING COLLEGE ("DOWLING" or the "COLLEGE") submits the within Memorandum of Law in Opposition of Plaintiff's motion for leave to amend the Complaint to add claims.

Plaintiff's proposed age discrimination claims against Defendant DOWLING should be denied as futile inasmuch as such claims cannot survive dismissal under Fed R. Civ. P. § 12(b)(6). In particular, Plaintiff has failed to timely exhaust administrative remedies with respect to the ADEA claim, by filing with an untimely charge with EEOC. Plaintiff has also failed to timely commence an ADEA action by moving to add an ADEA claim more than 90 days after issuance of the Right to Sue Letter. Given that Plaintiff's original Complaint only alleges an LMRA claim, the proposed amendment is untimely and cannot relate back to the original Complaint. Plaintiff also appears to have unduly delayed seeking leave to amend, even though a Right to Sue Letter had been issued as of October 2015. Last but not least, Plaintiff fails to state a *prima facie* claim of age discrimination in his proposed Amended Complaint under both the

1

ADEA and NYSHRL, making any amendment futile as such claims are dismissible as a matter of law.

Plaintiff's proposed amendments adding breach of contract claims against DOWLING should likewise be denied as Plaintiff has merely asserted facts showing discontent with the manner in which the collective bargaining agreements were negotiated and, in addition to that, lacks standing to assert a breach of contract claim against the COLLEGE.

Notwithstanding the fact that Plaintiff's proposed amendments are all futile as a matter of law, Plaintiff's NYSHRL claims and other State law claims are preempted by LMRA, a Federal Law, inasmuch as resolution of Plaintiff's § 301 claims requires analysis of the collective bargaining agreement which is exclusively within the purview of Federal common law.

Lastly, in the event this Court denies Plaintiff leave to amend the Complaint, and denial of such leave is confined to Federal causes of action, this Court should deny Plaintiff leave to amend the Complaint by declining supplemental jurisdiction over such claims.

## STATEMENT OF FACTS

DOWLING COLLEGE, a private institution of higher learning, has its main campus located in Oakdale, New York; with another campus, located adjacent to the Brookhaven Airport where DOWLING's school of aviation is situated; and the Melville Center, located in Melville, New York.   About 2,000 full and part-time undergraduate and graduate students attend one of DOWLING's four schools: the School of Education; School of Arts & Sciences; Townsend School of Business; and the School of Aviation.

DOWLING's accreditor, the Middle States Commission on Higher Education, had recently found that enrollment had declined because of factors outside of DOWLING's control. As a private non-profit educational institution, tuition paid by DOWLING's students represents

approximately 96 percent of the COLLEGE's revenue. DOWLING's endowment has shrunk to about $2 million, from approximately $11 million only a decade ago. Stagnation in the elementary and secondary education job market has also resulted in reduced enrollment at the School of Education, which prepares students for teaching professions.

Due to the plummeting enrollment as well as the recent economic recession, DOWLING has been operating on a year-to-year basis. As recently as 2009, DOWLING had approximately 5,700 total students. DOWLING began the fall of 2014 with only 2000 students. Nevertheless, through a combination of buyouts and layoffs, savings have been realized by eliminating 26 faculty jobs, leaving DOWLING with about 51 full-time faculty to teach its 2,000 students. In addition, from 2009 to 2014, DOWLING has implemented reductions in force in non-faculty bargaining units. By way of example, Administrative / non-aligned staff were reduced by 126 positions, Local 153 Clerical positions were reduced by 50, and Local 30 / 434 maintenance and operations positions were reduced by 19 in that time frame.

In 2012 and, again in 2014, DOWLING has had to reopen negotiations with  labor bargaining unit and codefendant DOWLING COLLEGE CHAPTER NEW YORK STATE UNITED TEACHERS, LOCAL # 3890 (the "UNION") in order to stave off more drastic layoffs and to keep DOWLING financially solvent. DOWLING has since realized improved savings, and such savings and the resulting survival of DOWLING could not have been realized without reopening the faculty collective bargaining agreements. Both the 2012 and 2014 agreements clearly state that financial exigency had compelled some of the terms in the Memoranda of Agreement that resulted from reopening negotiations in 2012 and 2014.

Plaintiff MARTIN SCHOENHALS alleges in the original Complaint that he has been a full-time tenure track Professor of Anthropology at Defendant DOWLING COLLEGE since September of 1993. See Exhibit 3, Complaint, April 15, 2015. As a member of the full-time

faculty at DOWLING, Plaintiff has been represented by the UNION, a local affiliate of codefendant NEW YORK STATE UNITED TEACHERS ("NYSUT").

In the 2013-2014 academic year, it became clear to both DOWLING and the UNION that certain financial exigencies existed, as they are defined by the agreement between DOWLING and the UNION.  The parties mutually agreed that it was fiscally prudent to engage in negotiations regarding the implementation of structural changes in the full-time faculty workforce to reflect the economic realities of DOWLING's enrollment and revenue. The financial data setting forth the financial exigencies that necessitated this negotiated action was provided to, and verified not only by the Faculty Executive and Negotiating Committees of the UNION, but by an independent outside auditing firm retained by the UNION. The arms-length negotiations between the College and the Faculty Chapter throughout year 2014 culminated in a contractual agreement dated November 7, 2014. <u>See</u> Exhibit 4, original Faculty Agreement and Memorandum of Agreement of 2012, and Exhibit 5, Memorandum of Agreement of November 7, 2014.

Regardless of Plaintiff's discontent with the respective collective bargaining agreements, each of the actions described in Plaintiff's Complaint and the proposed First Amended Complaint were voted upon and approved by the membership of the UNION.

The negotiated agreement sets forth with great specificity the agreed upon mechanism by which certain savings would be reached, while at the same time still allowing the COLLEGE to fulfill the needs of its students both present and future, its academic mission and its accreditation responsibilities.

The concept of first offering early retirement incentive plan ("ERIP") opportunities to eligible classes of employees before making a determination to implement reductions by other means was a negotiating proposal made by the UNION on behalf of its membership, and

4

accepted by the COLLEGE in furtherance of an overall negotiated solution. The duly authorized representatives of the UNION negotiated the agreement and participated in the decision making regarding its implementation, and the terms of the agreement were voted on and overwhelmingly approved by the Chapter membership. See Exhibit 5.

The November 7, 2014 agreement envisioned that anticipated voluntary resignations occasioned by the offer of an ERIP to eligible employees would reduce the need for terminations. Notwithstanding that, even after certain members of the faculty had chosen to accept an ERIP, DOWLING still had to terminate faculty members in order to realize more savings.

Although Plaintiff was eligible to elect an ERIP option set forth in the November 7, 2014 agreement, he did not elect to do so. This lead to the COLLEGE engaging in an analysis as set forth in the collective bargaining agreements, that then led to the eventual decision to eliminate Plaintiff's position and the Anthropology Department as a whole.

The framework and criteria used for cuts were negotiated between the UNION and COLLEGE administration as a part of the collective bargaining process. Once decided upon, an administrative team set about applying the methodology to the faculty. Chapter representatives consulted with the Administration representatives and approved the methodology to determine which positions would be reduced in the best interests of the College. The methodology was applied in consideration of all positions reduced, not just Plaintiff's.

Though enrollment data and patterns were the primary tool used to identify potential cuts, the administration's decision-making process was also deeply influenced by considerations of how best to maintain the overall academic integrity of the COLLEGE and uphold its mission. The reduction in force had to be deep, but the administration (in consultation with the UNION) had to ensure that all essential academic programs and services could be maintained.

Upon reviewing the relevant data, it became clear that the COLLEGE would need to eliminate the Department of Anthropology and all of the majors that it served.  Plaintiff was a professor of Anthropology at the College, along with one other professor who had already indicated his intention to depart from the College. In the Fall of 2014, Anthropology taught a total number of approximately 79 students.  Plaintiff taught 34 of those. Anthropology had five majors and a ratio of merely 2.5 undergraduate majors for each Full Time Faculty member. These numbers were simply unsustainable for a private college in the 2014 economic climate.

While the COLLEGE would need to eliminate the Anthropology Department and the majors that it served, it could not simply eliminate multiple programs in the Arts and Sciences, even if several of those other areas had low enrollment, and still be true to the mission of being a comprehensive college with a liberal arts tradition.  Striking this balance caused instances where cuts needed to be made in areas with greater enrollments. This effect is dramatically evident in the psychology department, where 2 of the 6 faculty were identified for separation even though Psychology was a thriving area.

In the Fall of 2014, the Psychology Department taught a total of 616 students, had 144.5 majors and a ratio of 24:1 undergraduate majors to Full Time Faculty, among the strongest enrollment at the College.  The two Professors of Psychology who were reduced taught 105 and 80 students respectively, as compared to Plaintiff's 34 students.  Yet the cuts described above were made to staffing in that department in order to preserve minimal staffing in other areas that were struggling, but deemed to be critical to the college and its mission of providing a comprehensive liberal arts education.

Similarly, the Management and Leadership section of the School of Business was reduced by 2 positions from 6 to 4 in the interests of maintaining overall balance despite comparably strong enrollment data. That section serviced 241 undergraduate majors in the Fall

of 2014, along with 280 graduate majors. The total students taught were 1,272 and the department had a ratio of 40:1 undergraduate majors to Full Time Faculty.

It should be noted that many faculty sustain healthy enrollments in classes without having many majors. In some cases (economics/chemistry) it is because those subject areas play a vital service role in other majors (economics is required of all business majors, while chemistry is required in the environmental science and biology areas, both with more robust enrollment numbers). In other cases a particular subject area has a presence in DOWLING's core curriculum. The core curriculum is broken into broad subject areas, and all DOWLNG students need to take two courses from a large laundry list in each area. Since core classes are a requirement that could be fulfilled by other subject areas in a grouping, a subject area whose student body came primarily through core was seen as less essential than those who were primarily teaching majors. In sum, maintaining the COLLEGE's ability to service the core and uphold academic integrity is not dependent on any single department. For instance, students were required to take classes in either anthropology or psychology, and a reduced anthropology presence does not prevent students from fulfilling that obligation via psychology.

An additional consideration was the future academic vision for the college. What role do these programs play in DOWLING's plans for future offerings, and/or what is the likelihood of increasing student demand for that area? In light of the economic challenges faced and the unfortunate necessity for reductions, the COLLEGE was confronted with making difficult choices, and Anthropology was not recognized to be a program that fit within that vision for the future.

The four departments with the lowest number of majors in the school as of the Fall 2014 were Chemistry (8 majors), Anthropology (5 majors), Music (4 majors), and Philosophy (3 majors).

Chemistry plays a vital role in the Biology and Environmental Science majors, two of the healthiest programs at DOWLING's School of Arts and Sciences. The COLLEGE was at the time also contemplating an increase in its emphasis on STEM ("Science, Technology, Engineering, and Math") education as it was anticipated that STEM could generate more tuition revenue. As such, a Chemistry department plays a potentially vital role. Chemistry was also a department of one, so any faculty cuts there would have left no full time faculty member in Chemistry and would have therefore eliminated that whole department.

Music has a robust presence in the context of DOWLING students meeting their core requirements. The presence of music at DOWLING was deemed essential given the COLLEGE's identity as a liberal arts college. DOWLING admissions recruiters had also come back with strong student interest in expressive arts therapy (music therapy, art therapy, etc....), and were developing that program. There were two music professors, but since one took the voluntary ERIP, cutting the other would have meant that no full time faculty would remain in music.

Philosophy, like music, had existed as an integral part of DOWLING's core curriculum requirements. However, Philosophy also provided the ethics courses for a minor in Bio Ethics, a highly recommended minor for all students pursuing health and allied fields. Moreover, the Criminal Justice program, one of DOWLING's fastest-growing majors in 2014, also has an ethics component. Finally, Philosophy plays a role in many of the new degree programs the school is building (such as Health Studies and Sustainability Studies). As DOWLING's strategic vision at the time placed an increased emphasis on skills training, the administration anticipated a role of increasing importance for the philosophy department. Training in ethical and critical thinking was deemed an absolutely vital part of the college's core mission, and as such, the administration chose to maintain this department. There were two philosophy professors, but

one took the voluntary ERIP, so separating the other would have meant that no full time faculty would remain in that department.

Anthropology is part of the Sociology/Anthropology major, as well as the core. As previously discussed, the core presence of Anthropology accounts for much of its enrollment, but this was deemed to be a secondary factor. The core, though critical to the college, does not depend on the presence of Anthropology. There were other options available to students for fulfilling the core requirement other than Anthropology, and the College could clearly fulfill its stated mission in the absence of an Anthropology department.

Unlike Philosophy, Chemistry, and Music, Anthropology did not have a stand-alone major, but instead played a minority role in a blended major (Sociology/Anthropology). The Sociology/Anthropology major had two tracks. One was the standard Sociology/Anthropology track; the other was a Social Work track.

The Social Work track required students to take 18 required credits of sociology/social work, 3 required credits of Anthropology, and 12 credits of either Sociology and/or Anthropology. DOWLING undertook a careful analysis of the transcript of every Soc/Anthro Social Work major and found that the overwhelming majority of elective credits took place in Sociology. Any Anthropology credits from this track were negligible.

The Sociology/Anthropology major required 15 credits in Anthropology and 18 credits in sociology. For purposes of the analysis of the Department, those students were split equally between the two areas.

At the end of the analysis, DOWLING concluded that Anthropology could count 5 majors. Since DOWLING also offers a Sociology major, the social work track could be seamlessly moved to the Sociology major enabling the College to teach out any of its existing students, and only offer Sociology in the future. Given the depth of the required reductions,

Anthropology was not deemed to be an essential part of DOWLING's liberal arts mission. Sociology could reproduce many of the benefits, and the handful of courses they would need to offer going forward (estimates call for 2-3 a semester) could not sustain a full time faculty line.

As a result, Plaintiff's Anthropology department was terminated, and oversight for those classes fell under Sociology (which also administers Gerontology and Social Work). It is worth noting that Nassau Community College does not offer an Anthropology major, nor do other private colleges in the area, such as St. Joseph's College and Molloy College.

## ARGUMENT

I. **PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD AGE DISCRIMINATION CLAIMS SHOULD BE DENIED AS AMENDING THE COMPLAINT TO ADD AGE DISCRIMINATION CLAIMS WOULD BE FUTILE**

Plaintiff's motion for leave to amend to add age discrimination claims against Defendant DOWLING should be denied as futile inasmuch as such claims cannot survive dismissal under Fed R. Civ. P. § 12(b)(6).

While leave to amend a pleading should be freely granted when justice so requires, where there is an apparent or declared reason, courts should deny leave if the proposed amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 69 (2d Cir. 1998).

A proposed amended complaint is futile when claims plead in the amended complaint fail to state viable causes of action and could not withstand a motion to dismiss. See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); see Lucente v. Int'l Bus. Machines Corp., 310

F.3d 243, 258 (2d Cir. 2002); <u>Hunter v. Deutsche Lufthansa AG</u>, 863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012); <u>see also</u> <u>Mina Inv. Holdings Ltd. v. Lefkowitz</u>, 184 F.R.D. 245, 257 (S.D.N.Y.1999); <u>Prudential Ins. Co. of Am. v. BMC Indus., Inc.</u>, 655 F.Supp. 710, 711 (S.D.N.Y.1987). _"The Proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed.R.Civ.P 12(b)(6)." <u>Journal Publ'g Co. v. Am. Home Assurance Co.</u>, 771 F.Supp. 632, 635 (S.D.N.Y. 1991).

### 1. *Age Discrimination Claims Are Time-Barred*

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." <u>Tanvir v. New York City Health & Hospitals Corp.</u>, 480 Fed.Appx. 620, 621 (2d Cir.2012) (<u>quoting</u> <u>Legnani v. Alitalia Linee Aeree Italiane, S.P.A.</u>, 274 F.3d 683, 686 (2d Cir.2001)).

Where a plaintiff had initially filed a grievance with a state or local employment discrimination agency, that plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred," or within 30 days after receiving notice that the state or local agency has terminated the proceeding, whichever is earlier. <u>See</u> <u>Thomas v. New York City Dep't of Educ.</u>, 938 F. Supp. 2d 334, 346-48 (E.D.N.Y. 2013); <u>see also</u> 42 U.S.C. § 2000e–5(e)(1).

If a charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful employment practice occurred. <u>See</u> <u>Thomas</u>, 938 F. Supp. 2d at 346-48; <u>see also</u> <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 765 (2d Cir.1998); <u>Benjamin v. Health & Hosps. Corp.</u>, No. 07CV2487(KAM)(LB), 2009 WL 2959622, at *6 (E.D.N.Y. Sept. 11, 2009) <u>aff'd,</u> 394 F. App'x 829 (2d Cir. 2010).

Here, Plaintiff's proposed First Amended Complaint lacks any allegations related to compliance with administrative agency filing and only vaguely alludes in the Memorandum of Law in Support that a "Charge of Discrimination based on age" was filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and a Right to Sue Letter was issued. Plaintiff does not attach the Charge to the motion so, for ease of reference and completeness, we attach said documents to the Declaration in Opposition. See Exhibits 1 and 2.

Plaintiff alleges that he received a letter of termination from his employer, dated November 21, 2014, the date of the most recent claimed discriminatory act. The Charge of Discrimination filed with the EEOC on July 27, 2015, alleges that the "DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (Month, day, year) [was] 12-01-2014." See Exhibit 1.

Accepting Plaintiff's claim of the most recent date, the latest date that a claim could have been timely filed with respect to Plaintiff's employment is May 30, 2015, which is the 180th day after December 1, 2014. If, therefore, Plaintiff only filed with EEOC - and according to the Charge of Discrimination it was only filed with EEOC and not with a State or local agency - the charge should have been filed within 180 days after the alleged unlawful employment practice occurred. Since Plaintiff claims in the Memorandum of Law that the charge was filed in July of 2015 and the Charge itself indicates it was received on July 27, 2015, Plaintiff's ADEA claim is time-barred. Accordingly, inasmuch as Plaintiff has failed to (timely) exhaust administrative remedies with respect to the ADEA claim, the Court should deny leave to permit Plaintiff to amend his Complaint to add an ADEA claim.

*2. Plaintiff Failed to Timely Commence an Age Discrimination Action*

The Memorandum of Law only claims that the Right to Sue Letter was sent in October 2015. The Right to Sue Letter is not attached to Plaintiff's motion or the proposed First

Amended Complaint though we attach the Right to Sue Letter to the Declaration in Opposition, as Exhibit 2. Accordingly, assuming the October date is correct, Plaintiff's claim is untimely under 29 U.S.C. § 626(e), which provides that "[a] civil action may be brought . . . within 90 days after the date of the receipt" of the letter. 29 U.S.C. § 626(e); see Wang v. Palmisano, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014).

In order to be timely, a claim under the ADEA, Title VII, or the ADA must be filed within 90 days of the claimant's receipt of a right-to-sue letter. See 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); 29 U.S.C § 626(e); Holowecki v. Fed. Express Corp., 440 F.3d 558, 563 (2d Cir.2006); Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 79 (2d Cir. 2003); see also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149-50, 104 S.Ct. 1723, 1724-25, 80 L.Ed.2d 196 (1984) (per curiam). "In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter." Sherlock v. Montefiore Medical Ctr., 84 F.3d 522, 525 (2d Cir.1996). "The requirement that a lawsuit be brought within 90 days of receiving a right to sue letter from [the] EEOC is treated like a statute of limitations." Carpenter v. City of New York, 2011 WL 2118599, 2 (E.D.N.Y 2011); Manley v. N.Y. City Police Dep't, No. 05–CV–679 (FB)(LB), 2005 WL 2664220 (E.D.N.Y. Oct. 18, 2005). The ninety-day period is measured in calendar days, not business days. See Fed.R.Civ.P. 6(a); Manley, 2005 WL 2664220.

In the instant action, Plaintiff fails to plead in his proposed First Amended Complaint that he received a Right to Sue letter. The Right to Sue letter in Exhibit 2 indicates that it was mailed on October 15, 2015. The last possible date that Plaintiff could have therefore commenced an ADEA action would have been on or about January 15, 2016. For these reasons, Plaintiff's proposed amendment adding an ADEA action is futile.

### 3. *Plaintiff's Proposed Age Discrimination Claims Do Not Relate Back to this Action*

Although the within action was filed on April 15, 2015, the original Complaint in this action is completely devoid of any mention that Plaintiff felt discriminated against on the basis of age. See Exhibit 3.

While Federal Rule of Civil Procedure Rule 15(c), allows amendments to relate back to the date of the original pleading "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," courts also must inquire into "whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." C. Wright & A. Miller, 6 *Federal Practice and Procedure: Civil* § 1497 (1971); see Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir.1999) ("the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."); see also Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 55 (E.D.N.Y. 2015); In re Gilat Satellite Networks, Ltd., No. 02–CV–1510, 2005 WL 2277476, at *26 (E.D.N.Y. Sept. 19, 2005).

In this case, the federal claims in the original complaint were based wholly upon allegations that put Defendant DOWLING on notice of having to defend a hybrid DFR/breach of agreement claim under Section 301 of the Labor Management Relations Act. Facts suggesting that Plaintiff's age and the age of other employees may have also been pertinent to Plaintiff's termination, were never even hinted at in the original Complaint; certainly, while Plaintiff and Defendants have already engaged in initial discovery, Plaintiff has not, until the instant motion, formally advised Defendant DOWLING that it would be turning this litigation into an age discrimination case.

Regardless, Plaintiff appears to have unnecessarily and unduly delayed seeking leave to amend, even though a Right to Sue Letter had been issued in October 2015. Plaintiff has not explained delaying the motion for four months despite having no reason to delay the motion.

Courts have held that where, for example, a plaintiff's original complaint alleges only race discrimination, a motion proposing to amend the complaint to include sex discrimination, after the statutory period for filing a complaint has passed, can be denied as untimely. See Campbell v. A.C. Petersen Farms, Inc., 69 F.R.D. 457 (D.Conn.1975). Such an amendment was subject to dismissal on grounds that the sex discrimination claims had not been raised in the original complaint. Id. The Court in the Campbell case found that the original complaint, which was filed within the statutory period, contained no reference to sex discrimination; the gravamen of the original complaint was exclusively race discrimination. Id. The Court therefore held that the new allegations, if based on sex discrimination, could not be deemed to arise out of the "conduct . . . set forth in the original pleading" and was not deemed to relate back to the date of the filing of the original complaint. Id.; see Rule 15(c) Fed.R.Civ.P.; see also Wallace v. Town of Stratford Bd. of Educ., 674 F. Supp. 67, 69-70 (D. Conn. 1986).

In Rosenberg v. Martin, the Second Circuit stated that the test for whether an amendment relates back is not contemporaneity of the facts pleaded, but rather "adequacy of notice." 478 F.2d 520, 526 (2d Cir.1973); see Wallace v. Town of Stratford Bd. of Educ., 674 F. Supp. 67, 69-70 (D. Conn. 1986). "[T]he inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleadings." Snoqualmie Tribe v. United States, 372 F.2d 951, 960, 178 Ct.Cl. 570 (U.S. Ct. Claims 1967)

In this case, Plaintiff fails to allege any discriminatory conduct against employer DOWLING in his original Complaint and certainly does not even allude to having issues with respect to age and the ages of other employees, despite reciting in great detail facts concerning

15

Plaintiff's discontent with both the UNION and the employer.  See Exhibit 3.  This Court cannot conclude here that DOWLING had adequate notice of the newly alleged age discrimination claims.   Accordingly, as the amendments cannot relate back to the date of the original Complaint, this Court should deny the motion in its entirety.  Plaintiff is moving to amend to add an ADEA claim more than 90 days after issuance of the Right to Sue Letter.  Since the Right to Sue Letter was not sent until October 15, 2015, and more than 90 days have passed since that day, Plaintiff's motion to add an ADEA claim should be denied as time-barred.

   *4.   Failure to State Allegations Establishing Prima Facie Case of Age Discrimination*

   Where a plaintiff's proposed amended complaint fails to plead viable causes of action, and could not, if granted, withstand scrutiny under the Fed.R.Civ.P 12(b)(6) motion to dismiss standards, such a proposed amended complaint is futile and should be denied. See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990).  In order to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that (1) he was in the protected age group; (2) he was qualified for the position; (3) he suffered an adverse employment decision; and (4) the adverse employment decision occurred under circumstances giving rise to an inference of discrimination.  See Courtney v. City of New York, 20 F.Supp.2d 655, 658 (S.D.N.Y.) (citing Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir.1998)).

   Under NYSHRL § 296, it is similarly unlawful for "an employer . . . because of an individual's age . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).  Due to the similarity of the statutes, claims for age discrimination under the NYSHRL are analyzed under the same basic framework as required in a federal ADEA claim. See Ludwig v. Rochester Psychiatric Ctr., 347 Fed.Appx. 685, 686 n. 1 (2d Cir. 2009); see also Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011).

The Supreme Court in Gross v. FBL Financial Services, Inc. held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). The quoted language has, since the Gross decision, been strictly applied to uphold what is now ADEA doctrine; that the ADEA does not authorize mixed-motive age discrimination claims. Id. at 175, 129 S.Ct. 2343; see Bohnet v. Valley Stream Union Free Sch. Dist. 13, 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014) aff'd, 594 F. App'x 53 (2d Cir. 2015); Deylii v. Novartis Pharm. Corp., No. 13-CV-06669 NSR, 2014 WL 2757470, at *7 (S.D.N.Y. June 16, 2014); Payne v. Malemathew, No. 09–CV–1634 (CS), 2011 WL 3043920, at *2 (S.D.N.Y. Jul. 22, 2010). Therefore, to survive a motion to dismiss, the plaintiff must plead enough facts to make plausible the conclusion that  "but for" age, the plaintiff would not have been fired.  See Bohnet v. Valley Stream Union Free Sch. Dist. 13, No. 12–CV–1989 (DRH), 2014 WL 3400462, at *4 (E.D.N.Y. July 14, 2014).

In Garnett-Bishop v. New York Cmty. Bancorp, Inc., this Court held that pleadings alleging activities and promotions designed to replace plaintiffs and others adversely affected by mass terminations, with younger less experienced individuals, whose compensation would be significantly less than those employees who had been terminated, "do not plausibly state a claim for age discrimination under the ADEA."  No. 12-CV-2285, 2014 WL 5822628, at *23-27 (E.D.N.Y. Nov. 6, 2014); see Leon v. Dep't of Educ., No. 10–CV–2725, 2014 WL 1689047, at *13 (E.D.N.Y. Apr. 29, 2014); Sobon v. Horizon Eng'g Assocs., LLP, No. 5:13–CV–1431 (GTS), 2014 WL 4889340, at *9 (N.D.N.Y. Sept. 30, 2014).

Interestingly, to Plaintiff's proposed allegations concerning age discrimination, courts have held that pleadings containing allegations claiming discrimination against "tenured" or "high-priced" teachers, are not, without more, sufficient to support viable age discrimination

claims. Adams v. New York State Educ. Dep't, 752 F. Supp 420, 464-66 (S.D.N.Y. 2010) aff'd sub nom. Ebewo v. Fairman, 460 F. App'x 67 (2d Cir. 2012); see Cross v. N.Y.C. Transit Auth., 417 F.3d 241 (2d Cir.2005) ("The law recognizes that 'seniority is not a sufficiently accurate indicator of age' that, by itself, can support an inference that adverse actions based on seniority necessarily evidence age discrimination."); Woodman v. WWOR–TV, Inc., 411 F.3d 69, 85 (2d Cir.2005) ("[A]n employee's age is analytically distinct from his years of service.").

Seniority generally is not a sufficiently accurate indicator of age to allow claims to go forward merely because more senior employees have been adversely impacted by an employment decision. Adams, 752 F. Supp. 2d at 464-66 (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 611, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993)); Hodges v. Rensselaer Hartford Graduate Ctr., Inc., No. 06–CV–850, 2008 WL 793594 at *10 (D.Conn. Mar. 20, 2008); Diamantopulos v. Brookside Corp., 683 F.Supp. 322, 329 (D.Conn.1988).

Thus, in Adams v. New York State Educ. Dep't., a case involving teachers bringing action against their employer alleging deprivation of procedural due process rights, including age discrimination, arising from disciplinary proceedings, the Southern District of New York found bare allegations that plaintiffs are over 40 years of age and were replaced by younger teachers to be insufficient for purposes of stating a claim for age discrimination. See Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420 (S.D.N.Y. 2010). The Southern District specifically found that alleging facts in such a manner merely "repeats the statutory elements, without setting out any facts from which age discrimination can be inferred." Id. In addition, where allegations state in conclusory fashion that a teacher was replaced by a younger teacher, because of age, but fails to set forth the teachers' respective ages, such allegations represent "an unadorned, the-defendant-unlawfully-harmed-me accusation," which, in the eyes of the Court, amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action . . . ." Id.

Plaintiff also fails to state facts offering circumstances surrounding the employment decision which, Plaintiff believes, would give rise to an inference of age discrimination. The proposed First Amended Complaint certainly does not support an inference that Plaintiff was terminated because of age. It is clear from the detailed factual recitation in both the original Complaint and the proposed Amended Complaint, that Plaintiff is dissatisfied with the eventual collective bargaining agreement that the Union had negotiated. Plaintiff ignores the financial exigency that the COLLEGE was facing and now, without any prior notice, desires to turn this action into a discrimination action. In the proposed First Amended Complaint, Plaintiff actually concedes there to be a causal connection between the enforcement of (and his disagreement with) the collective bargaining agreement and his termination. The facts, taken together and incorporated by reference in each respective age discrimination claim, cannot therefore plausibly constitute the "but for" age causation that the Plaintiff would need to plead a cognizable claim for age discrimination. See Abbasi v.. Herzfeld & Rubin, P.C., 863 F.Supp. 144, 147 (S.D.N.Y.1994) (plaintiff who alleged no facts relating to a possible causal relationship between his discharge and his age could not establish an inference of age discrimination).

Where a plaintiff cannot establish a *prima facie* case of age discrimination through proposed amended pleadings, such leave to amend would be denied as a matter of law. See Lamb v. Henderson, No. 98 CIV.2756 (RWS), 1999 WL 596271, at *3 (S.D.N.Y. Aug. 9, 1999).

Accordingly, as Plaintiff here fails to sufficiently state claims for age discrimination, this Court should deny Plaintiff's proposed age discrimination claims under both the NYSHRL and the ADEA.

## II.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND ADD BREACH OF CONTRACT CLAIMS SHOULD BE DENIED AS AMENDING THE COMPLAINT TO ADD BREACH OF CONTRACT CLAIMS WOULD BE FUTILE

Plaintiff's motion for leave to amend and add breach of contract claims should be denied as futile because the claims fail to allege that any provision of a contract that Plaintiff was a party to, has been breached.

### 1.   *Plaintiff Fails to State that a Provision of a Contract was Breached*

Plaintiff's third cause of action alleges that DOWLING breached its contract with Plaintiff by "stripping its long-term, senior faculty, who had all been previously granted tenure protection for the duration of their careers, of tenure." See proposed First Amended Complaint, page 17-18, ¶¶ 72-74.  A review of the relevant collective bargaining agreements in Exhibits 4 and 5 (these agreements are incorporated into Plaintiff's Complaint by reference (see Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)) demonstrates, however, that the agreements do not in any way limit the rights of the UNION and the COLLEGE to reach an agreement concerning the manner in which personnel or departments are to be eliminated in light of financial exigency.  It is black letter law that, absent an express contractual prohibition, an employer in New York may discharge an employee for any reason or no reason.  See Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211-12 (1987).

Plaintiff failed to plead a breach of contract based upon the UNION agreements, especially since the pleadings do not even suggest that a particular provision in a particular contract was breached.  Rather, Plaintiff alleges, in his Third Cause of Action against DOWLING, that the purported breach that the COLLEGE committed was in "negotiating a contract that effectively stripped its tenured faculty of tenure protections." See proposed First

Amended Complaint, page 18, ¶ 73.  Affording Plaintiff all favorable inferences with respect to this allegation, it is clear that Plaintiff has merely claimed to having an issue with the manner in which the contract was negotiated, but fails to actually allege breaches of any of the contracts. Plaintiff's allegations can more accurately be described as an expression of mere discontent with the end result of a negotiated agreement between the UNION and the COLLEGE rather than a viable claim for breach for contract.

Plaintiff has not alleged or shown any authority, contract or law that prohibits DOWLING from terminating the employment of a tenured employee through elimination of his department.  Plaintiff has thus failed to articulate any contractual limitation that was allegedly breached here, as to DOWLING's right to terminate Plaintiff and eliminate Plaintiff's department.

It should be noted that under New York State law, claims that a college or university has violated internal procedures concerning academic or administrative decisions such as tenure must be asserted in an Article 78 proceeding, not in a plenary action.  See Maas v. Cornell University, 94 N.Y.2d 87, 92-93, 699 N.Y.S.2d 716, 719 (1999) (Article 78 proceeding is the appropriate vehicle for review of controversies involving colleges and universities, not a plenary action); Risley v. Rubin, 272 A.D.2d 198, 708 N.Y.S.2d 377, 378 (1st Dept. 2000) (plenary action, by professor alleging that Fordham University breached employment contract dismissed for failure to timely commence Article 78 proceeding); Klinge v. Ithaca College, 244 A.D.2d 611, 663 N.Y.S.2d 735, 736 (3d Dept. 1997).  Leave to amend to add Plaintiff's proposed causes of action alleging breach of contract on account of the manner in which his termination occurred, should therefore be denied on account of Plaintiff failing to commence his action in the manner provided for by Article 78 of the CPLR.

21

2. *Plaintiff Lacks Standing to Present a Breach of Contract Claim*

To the extent that Plaintiff purports to challenge DOWLING's decision to terminate his position as a breach of the collective bargaining agreement with the UNION, Plaintiff lacks standing to present such a claim.

An employee lacks standing to bring a lawsuit alleging breach of contract against his employer "since a union member has no individual rights under a collective bargaining agreement which [she] can enforce against [her] employer except through the union." Berlyn v. Board of Education, 80 A.D.2d. 572, 572 (2d Dept.), aff'd, 55 N.Y.2d. 912, 913 (1982).

By virtue of the foregoing, this Court should deny Plaintiff's motion for leave to amend in its entirety, and, specifically deny Plaintiff's motion to the extent that Plaintiff seeks to add breach of contract claims involving contracts between the UNION and DOWLING.

### III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD NEW YORK STATE HUMAN RIGHTS LAW CLAIMS SHOULD BE DENIED AS FEDERAL LAW PREEMPTS STATE LAW CLAIMS

Notwithstanding the fact that leave to add NYSHRL claims should be denied for the reasons more fully discussed above, Plaintiff's motion for leave to add NYSHRL claims should be denied as Federal law preempts adding State Law claims and Plaintiff has already elected his remedies by filing a charge with the National Labor Relations Board ("NLRB").

When a state regulates an activity which constitutes an unfair labor practice "due regard for the federal enactment requires that state jurisdiction must yield." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Courts have regularly held that state law claims alleging conduct encompassed by the LMRA or within a union's duty of fair representation, are preempted. Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003); see Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d

206 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.").

To prevail on a hybrid Duty of Fair Representation claim under Section 301 of the LMRA, a plaintiff must allege a claim against the union for a breach of the DFR under the LMRA, and, separately, a claim against the employer for a breach of the collective bargaining agreement. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); Vaca v. Sipes, 386 U.S. 171, 186-88, 87 S. Ct. 903, 914-16, 17 L. Ed. 2d 842 (1967). Although an employee may sue a union and an employer in federal court, an employee attempting to maintain a hybrid action must allege that both the DFR and the breach constitute violations of the LMRA. In particular, a plaintiff must plead and prove (1) that the employer breached a collective bargaining agreement; and (2) that the union breached its DFR. See White v. White Rose Food, 237 F.3d 174, 178 (2d Cir.2001). A "plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." Id. at 179.

Here, Plaintiff proposes allegations in his proposed First Amended Complaint accusing DOWLING of violating the NYSHRL by discharging Plaintiff because of his age. Because Plaintiff seeks to vindicate the same rights as those protected by the hybrid duty of fair representation/breach claims, and resolution of Plaintiff's § 301 claims requires analysis of the collective bargaining agreement, Plaintiff's NYSHRL claims are preempted. Accordingly, leave to permit amendment to add Plaintiff's state law claims should be denied.

It should be noted that before bringing such a hybrid action, the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement, which Plaintiff here has failed to do. See Dougherty v. Am. Tel. & Tel. Co., 902 F.2d 201, 203 (2d Cir.1990); see Exhibit 4, page 94, provisions regarding grievance and arbitration procedures. Instead, here,

23

Plaintiff had elected to seek relief through the National Labor Relations Board ("NLRB") by filing charges for the same purported violations as are alleged in this action. Once Plaintiff elected to pursue his grievances in the administrative forum, by filing a complaint with the NLRB, Plaintiff should be precluded from alleging new claims as such claims are barred by the election of remedies doctrine. See Wiercinski v. Mangia 57, Inc., No. 09-CV-4413 (ILG), 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010).

Here, the NLRB dismissed Plaintiff's complaint regarding the facts that are now the subject of the proposed First Amended Complaint. For these reasons, Plaintiff's motion adding allegations of unlawful discrimination to the Complaint should be denied in its entirety.

## IV.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO ADD STATE LAW CLAIMS SHOULD BE DENIED

To the extent that the proposed First Amended Complaint alleges any state law claims, including the age discrimination and breach of contract claims asserted, in the event such claims are determined to be State law claims, leave to amend to add such claims should be denied.

Under 28 U.S.C. § 1367(c) (3), the court may decline supplemental jurisdiction over state claims if all claims over which it has original jurisdiction are dismissed. If all of plaintiff's federal claims are dismissed, considerations of judicial economy, convenience and fairness dictate that the Court should dismiss the state claims as well. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 231 (S.D.N.Y. 1998).

In the instant matter, in the event this Court denies Plaintiff leave to amend the Complaint, and denial of such leave is confined to Federal causes of action, it is respectfully

requested that this Court deny Plaintiff leave to amend the Complaint to add State law claims as this Court should decline supplemental jurisdiction over such claims in the absence of Federal claims.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Court deny Plaintiff's Motion for Leave to Amend the Complaint, and for such other and further relief as this Court may deem just and proper.

Dated:     Hauppauge, New York
           March 2, 2016

                             Yours, etc.
                             INGERMAN SMITH, L.L.P.
                             *Attorneys for the Defendant DOWLING COLLEGE*

                        By: *S/David F. Kwee*
                             DAVID F. KWEE, ESQ. (DK 1199)
                             150 Motor Parkway, Suite 400
                             Hauppauge, New York 11788
                             (631) 261-8834