**FILED
CLERK**
1:26 pm, Mar 20, 2019
**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MARTIN SCHOENHALS,

                Plaintiff,                  **MEMORANDUM OF
DECISION & ORDER**

            -against-                        2:15-cv-2044 (ADS)(ARL)

DOWLING COLLEGE,

                Defendant.
---------------------------------------------------------X

**<u>APPEARANCES:</u>**

**Advocates for Justice, Chartered Attorneys**
*Co-Counsel for the Plaintiff*
225 Broadway, Suite 1902
New York, NY 10007
       By:    Arthur Z. Schwartz, Esq.,
                Laine A. Armstrong, Esq., Of Counsel

**Law Office of Rachel J. Minter**
*Co-Counsel for the Plaintiff*
345 Seventh Avenue
New York, NY 10001
       By:    Rachel J. Minter, Esq., Of Counsel

**Ingerman Smith, LLP**
*Attorneys for the Defendant*
167 Main Street
Northport, NY 11768
       By:    Christopher J. Clayton, Esq.,
                David F. Kwee, Esq., Of Counsel

**SPATT, District Judge**.

On April 15, 2015, Martin Schoenhals, ("Schoenhals" or the "Plaintiff") commenced this action against Dowling College (the "College" or the "Defendant"), the Dowling College Chapter, New York State United Teachers, Local 3890 (the "Union") and New York State United Teachers, AFT, AFL-CIO ("NYSUT"). The Plaintiff alleged that the Union and NYSUT

1

breached the duty of fair representation, and that the College breached a collective bargaining agreement. These allegations stem from the actions leading up to the Plaintiff's termination from employment with the College in January 2015.

On February 17, 2016, the Plaintiff filed the instant motion to amend his complaint, seeking to add (1) a breach of contract claim under New York law against the College; (2) an age discrimination claim under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621, *et seq.*, against the College; (3) an age discrimination claim under the New York State Human Rights Law (the "NYSHRL") against the College; and (4) a breach of the duty of fair representation under the NYSHRL against the Union.

In August 2016, attorneys for NYSUT and the Union informed the Court that their clients had reached a settlement with the Plaintiff. Soon after, the Plaintiff agreed to discontinue the case as to claims against NYSUT and the Union. The instant motion was reinstated in September 2016 and fully briefed later that year.

On March 14, 2017, after receiving the College's notice of bankruptcy filing, the Court stayed the case pending the outcome of the College's bankruptcy proceeding. In January 2018, the bankruptcy court lifted the stay and restored the case to the active docket.

Since the Union and NYSUT are no longer parties in this action, the Plaintiff's request to amend the complaint to add a breach of the duty of fair representation under the NYSHRL against the Union & NYSUT is denied as moot.

## I. BACKGROUND

For the purposes of deciding the instant motion to amend, all facts alleged are assumed truthful and are construed in a light most favorable to the Plaintiff. The Court notes that it will not consider the 10-page "Statement of Facts" in the Defendant's opposition memorandum. This

recitation of the Defendant's version of the facts is outside the allegations contained in the complaint and contains no citation to documentary evidence. Accordingly, it may not appropriately be considered in a motion to amend.

In September 1993, the Plaintiff was hired by the College as a full-time, tenure-track Assistant Professor of Anthropology and Chair of the Anthropology Department. Six years later, he received tenure and was promoted to Associate Professor. In 2006, he was promoted to Professor. During the course of his employment with the College, Schoenhals was an active member of the Union, a local chapter of NYSUT. As of February 17, 2016, he was 54 years old.

Beginning in 2012, the College entered a chaotic and troubling period which was purportedly precipitated by years-long mismanagement by the College's administration. Since 2005, the College has employed seven short-term presidents who were paid substantial severance after termination. In 2013 alone, the College paid over $2 million in severance payments. The Plaintiff also contends that the Board of Trustees (the "Board") misused operating funds and engaged in self-interested dealings. Further, according to the Plaintiff, the Board also fostered an environment that created and preserved a disparity between high-paying administrators and under-compensated faculty. Union officers were frequently appointed to administrative positions within the College.

In April 2012, the College requested that the Union allow a renegotiation of the collective bargaining agreement ("CBA") that covered the faculty. It was in effect since 2007. The College asserted to the Union that the desire to revise the CBA was driven by a series of financial pressures, and claimed that if the Union refused to acquiesce, it would terminate all non-tenured faculty. However, the College did not provide the financial disclosures required by the CBA to support its financial hardship argument. The parties ultimately agreed to reopen

3

negotiations and approved an amendment to the CBA, the Memorandum of Agreement ("2012 MOA"). The 2012 MOA provided for compensation and benefits cuts that included a reduction of health benefits and a cessation of College contributions to the faculty's retirement plan. It also contained a provision to prevent future reduction of faculty without the existence of "financial exigencies." The Plaintiff was an outspoken opponent of the 2012 MOA and voted against the measure.

Following the adoption of the 2012 MOA by the Union, Schoenhals filed an unfair labor practice claim with the National Labor Relations Board against the Union as well as one with the New York State Attorney General's Office against the College and Board.

In the Summer of 2014, the Board terminated the then-president and appointed a group of Union members to the administration, including the Union's chief negotiator, the Liaison Committee Chair and a member of the executive committee. In September, the Union's president also resigned and was replaced by Mark Greer ("Greer"), who was allegedly a vocal critic of the Union. Soon after, the College again pressured the Union into re-opening CBA negotiations. A faculty meeting was held and the faculty voted to re-open negotiations. During this meeting, Schoenhals requested an audit of the College's financials but was told by Greer that it would take too long. An audit was never conducted by the Union. Although the Plaintiff questioned the veracity of the College's claims of financial difficulty, this allegation was likely baseless, as the College subsequently declared bankruptcy.

The renegotiated MOA (the "2014 MOA") contained the following changes:

(a) … the MOA simply omitted the entire section of the CBA providing for tenure for senior faculty. … ;

(b) [t]he Union surrendered its right to verify claims of financial exigency made by the College with new language containing a blanket acknowledgment by the Union that it accepts the College's claims;

4

(c) [it] eliminated the requirements of notice to a terminated faculty member and severance pay linked to years of service; [and]

(d) [it] required that savings of almost $5 million per year had to be realized in a period of only eight months and obtained exclusively from the faculty budget line – with $2,600,000 of the savings to come from a faculty reduction-in-force ("RIF") - without any plans to cut operating costs or reduce salary and benefits of over-paid administrative staff.

Dkt. 29-1 at 10. It also created the Early Retirement Incentive Program ("ERIP"), which provided financial incentives to full-time faculty members who achieved a minimum tenure of service and elected to retire. Along with ERIP, the 2014 MOA provided for full-time faculty reductions and detailed the formula used to determine who would be subject to termination The 2014 MOA was ratified by the faculty in November 2014. For Union members who were interested in taking advantage of ERIP, they had to resign before November 17, 2014, the day before the College would release a list of those who would be terminated. Those who did not utilize ERIP by the deadline could still take advantage of a less lucrative version ("ERIP II") if they elected to do so by November 21, 2014.

Prior to November 21, 2014, the Plaintiff was informed that he was marked for termination. Schoenhals calculated his own metrics based on the formula detailed in the 2014 MOA and determined that he should not have been terminated. In a November 20, 2014 meeting with the then-President and Union officers, he was told that his numbers were "healthy." Schoenhals presented Greer with his calculations and was told by those in the meeting that they needed to recheck their calculations. The Plaintiff asserts that he did not elect ERIP II by the deadline because he was led to believe that the College and the Union were re-evaluating his situation. After the ERIP II deadline, the Plaintiff sent multiple emails to Union executives and the then-President to demonstrate the mistakes made in formula calculations.

On December 5, 2014, the Plaintiff received a letter, dated November 21, 2014 and postmarked December 2, 2014, terminating his employment effective January 2, 2015. Schoenhals was unable to receive the benefits of either ERIP or ERIP II.

The Plaintiff now alleges, in this revised complaint, that he was terminated because of his age. "To replace the older, experienced senior faculty who had been targeted …, the college hired less experienced adjunct professors." Dkt. 29-1 at 15. Although Schoenhals names other colleagues in the amended complaint who were not terminated, he only states that they were "younger" than the Plaintiff; their ages are not revealed.

## II. DISCUSSION

### A. The Legal Standard

FED. R. CIV. P. 15(a), which typically governs a motion to amend a complaint, states, in relevant part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be freely given."); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint shall be freely given when justice so requires, and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." (internal citations and quotation marks omitted)). A proposed

amendment is futile if the claim-at-issue cannot withstand a motion to dismiss, pursuant to Rule 12(b)(6). *Positano v. Zimmer*, No. 12-CV-2288, 2013 WL 12084482, at *2 (E.D.N.Y. Dec. 9, 2013) (Spatt, J.). The decision on whether to grant a motion to amend rests within the sound discretion of the district court. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Hemphill*, 141 F.3d at 420; *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).

**B. ADEA Claim**

The Plaintiff seeks to amend the complaint to add a claim under the ADEA. It is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or] to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age …" 29 U.S.C. § 623(a); *see also Lorillard v. Pons*, 434 U.S. 575, 577, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978) ("The ADEA broadly prohibits arbitrary discrimination in the workplace based on age.").

**1. The 90-Day Filing Requirement**

The Defendant contends that the Plaintiff's ADEA claim is futile because Schoenhals failed to timely file his claim.

"[W]ithin 90 days after the issuance of a right-to-sue letter 'a civil action may be brought against the respondent named in the charge.'" *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984) (quoting 42 U.S.C. § 200e-5(f)(1)); *accord Miller v. Hous. Auth. of City of New Haven*, No. 3:13-CV-1855, 2014 WL 2871591, at *5 (D.

7

Conn. June 24, 2014) ("Title VII requires that a plaintiff exhaust her administrative remedies by timely filing a complaint with the EEOC, obtaining a right-to-sue letter, and filing suit within ninety days of the receipt of that letter."); *Toolan v. Bd. of Educ. Of City of New York*, No. 02 Civ. 6989, 2003 WL 22015437, at *2 (S.D.N.Y. Aug.25, 2003) ("To be timely, actions for violations of Title VII, the ADA, and the ADEA must be filed within 90 days after receipt of a right to sue letter from the EEOC."). The statutory period begins to run on the date the claimant receives the right-to-sue letter. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011); *Skibinski v. Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, LLP*, 57 F. App'x 900, 901 (2d Cir. 2003). If a complaint is not filed within the statutory 90-day period, the complaint is subject to dismissal. *See Johnson v. Trs. of Columbia Univ.*, No. 00 Civ. 8118, 2003 WL 2013371, at *3 (S.D.N.Y. Apr. 25, 2003), *report & recommendation adopted*, No. 00 Civ. 8118, 2003 WL 21433455 (S.D.N.Y. June 16, 2003).

In the instant case, the Plaintiff fails to plead in his proposed amended complaint that he ever received a right to sue letter from the EEOC. However, the Defendant has attached a right-to-sue letter from the EEOC that was mailed on October 15, 2015. The Plaintiff has not indicated when he received this letter; however, the letter specifies that it was received on October 19, 2015. Therefore, the Plaintiff was required to raise his ADEA claim on or before January 19, 2016. Schoenhals' instant motion to amend, which seeks to add an ADEA claim, was filed on February 17, 2016, approximately one month after the statutory period expired.

The Plaintiff contends that his failure to file his motion to amend during the statutory period is discharged by Magistrate Judge Arlene R. Lindsay's November 16, 2015 scheduling order (the "Scheduling Order"), which set a deadline of February 22, 2016 for the commencement of motion practice for joinder of additional parties or amendment of pleadings.

*See* Dkt. 23. Since the Scheduling Order provided Plaintiff until February 22, 2016 to file the amended complaint, the Plaintiff believes that he should not be held to the earlier statutory period.

The Second Circuit has sustained the strict enforcement the 90-day statutory period. *See Tiberio*, 664 F.3d at 38 ("Because [the plaintiff] initiated this action on February 28, 2011—93 days after her presumptive receipt of the right-to-sue letter—the District Court properly held that her claim is time-barred."). Yet, if a party is precluded by a court order or procedural rule from complying with the statute, equitable tolling may be appropriate. *Mendoza v. Lainesita Rest. Corp.*, No. 12-cv-4188, 2014 WL 3732811 (E.D.N.Y. July 25, 2014) is instructive. At the time, Judge Hurley's Individual Rules required that prior to filing a motion to amend, the moving party must request a pre-motion conference. Mendoza filed that request on December 20, 2012, prior to the 90-day period's expiration. By the time the district court held a pre-motion conference and Mendoza filed her motion to amend, the statutory period had expired. The Court held that since the "[p]laintiff would have been precluded from moving to amend her complaint had she not first requested a pre-motion conference[,]" equity required the Court to toll the filing requirement. *Id*. at *6.

In the instant case, the Plaintiff was not precluded from moving to amend his complaint. Although Magistrate Judge Shields set a scheduling order that allowed the Plaintiff to amend the complaint past the deadline, the Plaintiff is not excused from compiling with the statutory requirements. There is nothing in the record that indicates that Magistrate Judge Shields intended to toll any applicable statutory requirements nor is there any record that the Plaintiff's counsel ever raised the deadline prior to the Scheduling Order. Rather, the parties themselves proposed the dates in the Scheduling Order. The Plaintiff had every opportunity to file the

9

amended complaint prior to the deadline and would have been fully compliant with the Scheduling Order had he elected to do so. The Plaintiff *chose* to file the instant motion to amend after the requisite deadline; he was not *precluded* from doing so by this Court. In *Mendoza*, the Court tolled the filing requirement because the plaintiff was barred from complying with the statute by Judge Hurley's individual rules. Here, the Plaintiff elected to let the deadline pass. The equitable considerations discussed in *Mendoza* are absent from the facts articulated by the Plaintiff in this case.

Schoenhals argues that the 90-day period is only to *initiating* a federal discrimination lawsuit and does not cover *amending* a pleading to add a discrimination claim. This argument is without merit. 42 U.S.C. § 200e-5(f)(1)'s statutory filing period is satisfied when a claim is *asserted*, regardless of whether it is through an original complaint or an amended complaint. *See Haughton v. Town of Cromwell*, No. 3:14-cv-1974, 2017 WL 902847, at *2 (D. Conn. Mar. 7, 2017) (barring the plaintiff's retaliation claim because the motion to amend was filed seventeen months after receiving a right-to-sue letter). The Plaintiff was required to file his motion to amend within 90 days after receiving his right-to-sue letter, and failed to do so.

Finally, the Plaintiff asserts that even if his amendment is untimely, it relates back to the original complaint, which was filed on April 15, 2015. "Under FED. R. CIV. P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) (internal citations and quotation marks omitted). However, the original complaint makes no reference to the Plaintiff's age. Rather, it explicitly alleges that he was terminated because "he was a vocal opponent of decisions and actions by Union leadership[.]" Dkt. 1 at 12. There are no facts

alleged in that complaint that put the Defendant on notice of a potential age discrimination claim. *See, e.g.*, *McNeil v. Capra*, No. 13-CV-3048, 2015 WL 4719697, at *7 (S.D.N.Y. Aug. 7, 2015) (denying the plaintiff's motion to amend because he "has not provided any information on the substance of his claim, and the Court cannot determine whether the claim meets the requirements of Rule 15(c).").

Accordingly, the Plaintiff's ADEA claim is time barred. Allowing him to amend his complaint to include this cause of action would be futile.

### 2. Failure to State a Claim

Assuming *arguendo*, that the Plaintiff's ADEA claim was not time barred, the proposed amended complaint fails to state a claim for a viable cause of action.

An ADEA claim may be premised on two theories of discrimination: disparate treatment and disparate impact. *See Maresco v. Evans Chemetics*, 964 F.2d 106, 115 (2d Cir. 1992). The Plaintiff's cause of action is premised on both theories.

In order to state a claim of disparate treatment under the ADEA, a plaintiff must plead that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Terry v. Ashcroft*, 336 F.3d 128, 137-138 (2d Cir. 2003). This claim is analyzed using the same burden-shifting framework as that used in Title VII cases. *See id*. However, a plaintiff is not required to make a prima facie case of discrimination or succeed under the burden-shifting framework of *McDonnell Douglas* at the pleading stage. *See Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). To succeed at the pleading stage,

> [a] complaint must … allege the essential elements of an employment discrimination claim—that plaintiff suffered discrimination on the basis of

> protected status. A plaintiff must allege that he suffered an adverse employment action. To qualify as adverse, an action must cause a materially adverse change in the terms and conditions of employment, and not just mere inconvenience. Moreover, a plaintiff is required to set forth factual circumstances from which discriminatory motivation for such action can be inferred. Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus.

*Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). Further, the Plaintiff must allege that age was the "but for" cause of the adverse action. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

To support Schoenhals' claim that age was the "but for" cause of his termination, he contends that, rather than properly applying the methodology negotiated in the 2014 MOA, the Defendant improperly calculated elderly, tenured professors' metrics to support termination. However, the complaint lacks a factual basis to reach this conclusion. The amended complaint merely alleges that the Plaintiff is over 40 years of age and that he and others were replaced by younger, less experienced professors. Schoenhals does not mention the age of any other professors, regardless of whether they were terminated or retained. Such conclusory pleading precludes the Court from "draw[ing] the reasonable inference that the defendant is liable ofr the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Without even knowing the ages of the individuals involved, it is impossible for this Court to conclude that the terminations were caused by age discrimination.

Without providing the facts to allow the Court to draw a reasonable inference that Schoenhals was terminated because of his age, the Plaintiff has failed to state a claim based on disparate treatment.

The Plaintiff also asserts that the College's actions surrounding the 2014 MOA were actionable under a disparate impact theory. A disparate impact claim is based on facially neutral employment practices that impacts one class of employees harsher than another. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 95-96, 128 S. Ct. 2395, 171 L. Ed. 2d 283 (2008); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971) (explaining that disparate impact claims target "practices that are fair in form but discriminatory in operation"); *Maresco*, 964 F.2d at 115 ("The disparate impact doctrine, developed under Title VII, is also applicable to cases under the ADEA.").

To succeed in such a claim, the Plaintiff does not have to allege discriminatory intent. *See Diehl v. Xerox Corp.*, 933 F. Supp. 1157, 1164 (W.D.N.Y. 1996). Yet, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed … disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 242, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005) (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 656, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989) (emphasis in original)).

In the instant case, the Plaintiff asserts that "[t]he 2014 MOA procedure for targeting faculty for termination was written to disproportionally impact older employees." Dkt. 52 at 6. This alleges that "older employees" were singled out for early termination due to their age because of the Defendant's discriminatory animus toward older professors. These facts cannot constitute the basis for a disparate impact claim as they largely restate Schoenhals' disparate treatment claims. The Plaintiff identifies an intentionally discriminatory policy, the 2014 MOA procedures, and argues that the policy had a disparate impact on the elderly. A policy that is

13

written with the *intent* to discriminate cannot form the basis of a disparate impact claim. *See, e.g.*, *Maresco*, 964 F.2d at 115 ("[A]llowing the disparate impact doctrine to be invoked as [the plaintiff] proposes would simply provide a means to circumvent the subjective intent requirement in any disparate treatment case."); *Wado v. Xerox Corp.*, 991 F. Supp. 174, 186 (W.D.N.Y. 1998) ("[R]egardless of the label plaintiffs attach to their claims, they are at bottom disparate treatment claims only."), *aff'd*, 196 F.3d 358 (2d Cir. 1999). Schoenhals fails to allege, even in a conclusory fashion, that any facially neutral employment practice had a disparate impact against those employees over the age of 40. The Plaintiff's attempt to reframe his disparate treatment claim into disparate impact is unconvincing. Accordingly, the Plaintiff fails to state a disparate impact claim under the ADEA.

Allowing him to amend his complaint to include an ADEA discrimination claim would be futile.

## C. Breach of Contract Claim

Under New York law, there are four elements of a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Palmetto Partners, LP v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806, 921 N.Y.S.2d 260, 264 (N.Y. App. Div. 2011).

Under New York law, a plaintiff must identify the specific contractual provision or provisions that were allegedly breached. *M&T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 334 (W.D.N.Y. 2012) (collecting cases); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *Levy v. Bessemer Trust Co.*,

*N.A.*, No. 97 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997). *See, e.g.*, *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (dismissing breach of contract claim because the complaint only alleged, in a conclusory fashion, that there was "an express contractual relationship between the parties," and did not provide any further details regarding the alleged agreement). "Under New York law, 'before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.'" *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870, 2014 WL 764250, at *2 (S.D.N.Y. Feb. 25, 2014) (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 (N.Y. 1981)).

In the proposed amended complaint, the Plaintiff merely asserts that the Defendant "breached the collective bargaining agreement by stripping its long-term, senior faculty, who had all been previously granted tenure protection for the duration of their careers, of tenure." Dkt. 29-1 ¶ 73. This claim is not clarified by the Plaintiff's briefing materials, which are bereft of any discussion of his breach of contract claim.

Accordingly, the Plaintiff has failed to state a claim for breach of contract. *See Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) ("The [plaintiff] must allege the specific provisions of the contract upon which the breach of contract is based. A claim for breach of contract cannot be sustained simply by a conclusory statement that the accused breached a contract."). *See e.g.*, *Eastern Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, No. 2:17-cv-1034, 2017 WL 4162309, at *6 (E.D.N.Y. Sept. 19, 2017) (Spatt, J.) (dismissing breach of contract claim because "the Plaintiffs failed to properly specify what the agreement between the Plaintiffs and the Defendant consisted of and which provisions of any such agreement were violated"); *Silverman v. Household Fin. Realty Corp. of New York*, 979 F.

15

Supp. 2d 313, 319 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must specifically allege the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached."); *Kraus v. Visa Int'l Serv. Ass'n*, 304 A.D.2d 408, 756 N.Y.S.2d 853 (N.Y. App. Div. 2003) (dismissing a breach of contract claim because "plaintiff failed to allege the breach of any particular contract provision").

Amending the complaint to add a cause of action for breach of contract would be futile.

### D. State Law Claims

The Plaintiff also brings claims for age discrimination under the NYSHRL. "[C]laims brought under [the NYSHRL] are analytically identical to claims brought under Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (internal citations omitted). A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In employing its discretion, the district court balances the "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). In the Second Circuit, "when the federal claims are dismissed the state claims should be dismissed as well." *In re Merrill Lynch Ltd. P'Ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (internal citations and quotation marks omitted). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining jurisdiction over the remaining state-law claims." *Id*. (citing *Cohill*, 484 U.S. at 350 n.7). As the Supreme Court noted in *United Mine Workers v. Gibbs*, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring

for them a surer-footed reading of applicable law." 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

As this Court has denied the Plaintiff's request to amend his complaint to add a federal age discrimination claim, the Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ..."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991). *See, e.g.*, *Fernandes v. Moran*, No. 2:17-cv-3430, 2018 WL 2103206, at *11 (E.D.N.Y. May 7, 2018) (Spatt, J.) (declining to exercise supplemental jurisdiction after all federal claims are dismissed); *Calverton Hills Homeowners Ass'n, Inc. v. Nugent Building Corp.*, No. 2:17-cv-03916, 2017 WL 6598520, at *13 (E.D.N.Y. Dec. 26, 2017) (Spatt, J.) (same).

Accordingly, the Plaintiff's request to amend the complaint to add a discrimination claim under the NYSHRL is denied.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's motion to amend is denied in its entirety. The Plaintiff may proceed with his cause of action for breach of the collective bargaining agreement.

It is **SO ORDERED**:

Dated: Central Islip, New York

March 20, 2019

                                                             ___/s/ Arthur D. Spatt___

                                                             ARTHUR D. SPATT

                                                             United States District Judge